**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 31, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL E. DIESEL,

Defendant-Appellant.

No. 06-3325
(D.C. No. 05-CR-20005-JWL)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **McWILLIAMS**, and **GORSUCH**, Circuit Judges.

A federal jury found Michael E. Diesel guilty of willfully under-reporting to the IRS over $3 million of his personal income over a three-year period. The United States District Court for the District of Kansas thereafter sentenced Mr. Diesel, *inter alia*, to 42 months of incarceration. In this appeal, Mr. Diesel argues that we should overturn his conviction because (1) he "could not possibly have had the requisite *mens rea*"; (2) the government unconstitutionally required Mr. Diesel to "create his own tax

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

form"; and (3) the district court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny when it sentenced him to a mid-Guidelines term of 42 months of incarceration. Because Mr. Diesel's first two arguments are wholly without merit and Mr. Diesel's third argument is precluded by Supreme Court and our case law, we affirm.

* * *

Mr. Diesel founded and, through a series of trusts, effectively owned and operated a telecommunications research company which paid him an annual salary of $103,549 in 1998, $106,754 in 1999, and $108,788 in 2000. Mr. Diesel reported, and presumably paid, income tax on these amounts. In addition to his salary, however, Mr. Diesel's trusts also made over $3 million in distributions from 1998 to 2000, through a series of intermediate trusts, to the Pernour International Trust, an off-shore, Belize-based trust. Mr. Diesel controlled all of the trusts in the chain and ultimately received all of the proceeds from Pernour for his personal use. Mr. Diesel failed to pay income taxes on any of these proceeds.

Mr. Diesel apparently learned how to devise this scheme from the Aegis Company in Chicago, which, following a nationwide investigation, the government successfully prosecuted for tax fraud. In January 1998, an undercover IRS agent at an Aegis seminar in Belize tape recorded Mr. Diesel stating that (1) any income tax above ten percent is "confiscation"

and "everybody is trying to cheat" the IRS; (2) the "whole point" of the trusts he employed was that the IRS did not understand them; (3) the trusts are like a "Double K-1 disappearing tax liability trick"; and (4) the trusts were "too good to be true."

Unfortunately for Mr. Diesel, they were not. In January 2005, a federal grand jury returned a three-count indictment against Mr. Diesel, charging him, *inter alia*, with three felony violations under 26 U.S.C. § 7206(1) for his willful filing of 1998, 1999, and 2000 tax returns that failed to report over $3 million of taxable income to him. Mr. Diesel elected to proceed to jury trial.

During trial, Mr. Diesel put on a good-faith defense; the district court instructed the jurors that, if they found this defense credible, it negated the *mens rea* required by the crimes charged. In aid of his strategy, Mr. Diesel called his attorney, Scott Gross,[1] who served as Mr. Diesel's sole witness. Mr. Gross testified that, while he is not a tax attorney,[2] he had advised Mr. Diesel in 2001 that the Aegis trust plan was "appropriate and correct," so

---

[1] Mr. Gross is also one of Mr. Diesel's appellate attorneys on this case. The government has not objected to the propriety of this unusual arrangement, and accordingly we do not address it here.

[2] *See, e.g.*, IV Tr. Tran. at 599 ("Well, I really didn't have a tax background at the time I went to the seminar. The only tax background I had was one class in law school."); *id.* at 613 (stating the one course was "just basic federal income tax").

long as properly followed. But Mr. Gross also admitted that he knew that the United States Tax Court, as early as 1998, had ruled the Aegis trust plan illegal – and that he communicated this via letter to his clients, including Mr. Diesel.

The jury found Mr. Diesel guilty on all three counts, and the district court denied Mr. Diesel's motion for judgment of acquittal. At sentencing, the probation office recommended a Guidelines-based sentence of 37 to 46 months based, in part, on a two-level enhancement under U.S.S.G. § 2T1.1(b)(2) for Mr. Diesel's use of "sophisticated means" to conceal his tax evasion offense. Mr. Diesel objected to this enhancement on factual grounds, arguing that he had concealed nothing. Mr. Diesel also objected that a proper consideration of the factors enumerated under 18 U.S.C. § 3553(a) suggested that he deserved a below-Guidelines sentence. *See* Def. Sent. Mem. at 1-9; *see also* Sent. Tr. at 809-20. At the sentencing hearing, the district court indicated that it had considered Mr. Diesel's written sentencing submission in addition to his oral presentation; that it understood the Guidelines to be merely advisory; and that the Guidelines suggested a sentencing range of 37 to 46 months. The district court then announced its judgment that a 42-month sentence would be appropriate in this case, taking into account Section 3553(a) factors. Specifically, the judge noted, among other things, the seriousness and magnitude of Mr. Diesel's tax evasion

-4-

scheme; the sophistication of Mr. Diesel's efforts to hide his illegal conduct; as well as the possibility that, if not punished sufficiently, Mr. Diesel's conduct might tempt others to follow his example.

* * *

On appeal, Mr. Diesel raises three arguments. We address each in turn.

1. Mr. Diesel contends that he "could not possibly have had the requisite *mens rea*" when he signed his tax returns because it was only after signing each of those returns that he took and spent his annual distributions from the Pernour trust. Aplt. Op. Br. at 8; *see also id.* at 10, 12. Because Mr. Diesel, despite his assertion to the contrary, failed to raise this issue in the district court, we review for plain error. We hold, however, that Mr. Diesel's argument fails under any standard of review. The government's case had nothing whatsoever to do with when or how Mr. Diesel caused Pernour to distribute monies to him. Instead, the case focused on whether Mr. Diesel's tax returns failed to account as income to him the money siphoned into the Pernour trust. Thus, the *mens rea* question for the jury was whether Mr. Diesel, when he signed his tax returns, willfully failed to disclose as income the monies directed to the Pernour trust. *See* 26 U.S.C. § 7206(1) ("Any person who . . . [w]illfully makes and subscribes any return . . . which contains . . . a written declaration that it is made under the

-5-

penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony . . . .")

Ample evidence supports the jury's verdict on this score. Mr. Diesel made a number of highly incriminating statements to a tape-recorder-wielding undercover IRS agent at the tax-scam seminar in Belize, *see supra* pp. 2-3, and, on top of this, he stipulated that he "controlled the use and disposition of those [Pernour trust] funds for his own purposes" and failed to pay income taxes on them. Viewing, as we must, this evidence in the light most favorable to the jury verdict, *see United States v. Torres-Laranega*, 476 F.3d 1148, 1157 (10th Cir. 2007), we are in no position to conclude, as Mr. Diesel would have us, that a reasonable jury could not have found Mr. Diesel guilty of willfully failing to report all of his taxable income for the three years in question.

2. Mr. Diesel argues that, "when a nonresident alien trust seeks to take an estate or trust income distribution deduction, it must, according to the IRS, literally *create its own tax form* by merging portions of two existing tax forms – Form 1041 and Form 1040NR." Aplt. Op. Br. at 22 (emphasis in original). This, Mr. Diesel argues, "violates the spirit of this nation." Aplt. Rep. Br. at 11-12. Again, despite his assertion to the contrary, Mr. Diesel failed to raise this issue in the district court, so we review for plain error. But, again, under any standard of review, Mr. Diesel

cannot prevail. This case had nothing to do with when or how Mr. Diesel's various trusts made, credited, or reported distributions. As we have already indicated, it had everything to do with Mr. Diesel's under-reporting of his personal income on his *own* personal income tax return.

3. Mr. Diesel argues that the district court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny in two related ways. First, he argues that the district court erroneously treated as mandatory – rather than advisory – the Guidelines, in violation of *United States v. Booker*, 543 U.S. 220 (2005). Second, he contends that the district court violated *Cunningham v. California*, 127 S. Ct. 856 (2007), when it – rather than the jury – found that he engaged in "sophisticated concealment" sufficient to trigger a two-level sentencing enhancement under U.S.S.G. § 2T1.1(b)(2). Because Mr. Diesel raised neither of these objections before the district court,[3] we again review only for plain error. And we again find no error under any standard of review.

---

[3] While Mr. Diesel objected to this two-level enhancement on factual grounds (*e.g.*, facts demonstrated that Mr. Diesel reported his income in either his personal or trust returns and thus he did not conceal it), he did not object to the two-level enhancement on constitutional or other legal grounds. *See* Def. Mot. Obj. to PSR at 1-5; *see also* Sent. Tr. at 805-09. Mr. Diesel, however, did make a *Booker* and Section 3553(a) argument that his overall case presented unique circumstances and asked the district court for a sub-Guidelines sentence. *See* Def. Sent. Mem. at 1-9; *see also* Sent. Tr. at 809-20.

With respect to Mr. Diesel's *Booker* argument, the record simply does not support him. The district court expressly indicated that it treated the Guidelines as "advisory." *See* Sent. Tr. at 822 (emphasis added) ("I have given particular emphasis, of course, to the presentence investigation report and the United States Sentencing Guidelines, though treating those guidelines as *advisory only and not mandatory*, in arriving at what I think is a reasonable sentence in this case."). From this starting point, the district court then expanded the scope of its analysis outside of the Guidelines by weighing the Section 3553(a) factors and Mr. Diesel's arguments before ultimately holding that 42 months of incarceration would be "reasonable" in this case. *See id.* at 822-35.

With respect to Mr. Diesel's *Cunningham* argument, it is foreclosed by Supreme Court and our precedent. District courts may make factual findings and enhance sentences within the statutory range prescribed for the conduct found by the jury. *See, e.g.*, *United States v. Holyfield*, 481 F.3d 1260, 1262-63 (10th Cir. 2007) (citing *Harris v. United States*, 536 U.S. 545 (2002)). Quite unlike *Cunningham*, Mr. Diesel does not allege that his 42-month sentence fell outside this range. Nor could he, as 26 U.S.C. § 7206(1) permits district courts to sentence convicted individuals up to 36 months for each count. Mr. Diesel's 42-month sentence comfortably fell within the

108-month statutory maximum.

*Affirmed.*

Entered for the Court


Neil M. Gorsuch
Circuit Judge